## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **DAVID R. WHEAT,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **vs.** | ) | **Case No. CIV-06-508-AR** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant[1]** | ) | |

## MEMORANDUM OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security Administration (Commissioner) denying his applications for disability insurance and supplemental security income benefits. The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The Commissioner has answered and filed the administrative record (hereinafter Tr. _____). Both parties have briefed their respective positions, and thus the matter is at issue. For the reasons stated herein, the decision is affirmed.

## I. PROCEDURAL HISTORY

Plaintiff filed his applications for disability insurance and supplemental security income benefits, with a protective filing date of February 11, 2003, alleging that he became disabled as of July 7, 2002, due to heart trouble, high blood pressure, diabetes mellitus, and

---

[1]As of February 1, 2007, Michael J. Astrue became the Commissioner of the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d)(1) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Michael J. Astrue is substituted for former Commissioner Jo Anne B. Barnhart as the Defendant in this suit.

depression.   Tr.13, 56, 57-59, 72, 274-76.   The applications were denied on initial consideration and on reconsideration at the administrative level. Tr. 22, 23, 24-26, 28-29, 277, 278-80, 281, 282-83. Pursuant to Plaintiff's request, a hearing was held before an administrative law judge on March 23, 2005. Tr. 30, 288-325.  Plaintiff appeared in person with his non-attorney representative, and offered testimony in support of his applications. Tr.290, 295-317.  A vocational expert also testified at the request of the administrative law judge. Tr. 49-50, 317-22.  The administrative law judge issued her decision on November 16, 2005, finding that Plaintiff was not disabled within the meaning of the Social Security Act, and thus not entitled to benefits. Tr.10-12, 13-18. The Appeals Council denied Plaintiff's request for review on March 10, 2006,  and thus the decision of the administrative law judge became the final decision of the Commissioner. Tr. 5-7, 8.

## II.  STANDARD OF REVIEW

The Tenth Circuit Court of Appeals has summarized the applicable standard of review as follows:

> We review the agency's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  However, a decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it.  The agency's failure to apply correct legal standards, or show us it has done so, is also grounds for reversal. Finally, because our review is based on the record taken as a whole, we will meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking into account whatever in the record fairly detracts from its weight.  However, we may neither reweigh the evidence nor substitute our discretion for that of the Commissioner.

Hamlin v. Barnhart,  365 F.3d 1208, 1214 (10th Cir. 2004) (internal quotations and citations omitted).  The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled. Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988).  The claimant bears the burden of establishing a prima facie case of disability at steps one through four. Id. at 751 & n. 2.  If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity to perform work in the national economy, given his age, education, and work experience. Id. at 751.

## III.  THE DECISION OF THE ADMINISTRATIVE LAW JUDGE

In determining that Plaintiff was not disabled, the administrative law judge followed the sequential evaluation process set forth in 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920.  Tr. 14.  She first found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. Tr. 14, 17. At steps two and three, the administrative law judge found that Plaintiff suffered from diabetes mellitus, depression, and drug abuse, and found that these disorders were severe, but she also found that they were not severe enough to meet or equal one of the impairments listed in 20 C.F.R. Part 404, Appendix 1, Subpart P, Social Security Regulations, No. 4.  Tr. 14-15, 17. The administrative law judge next found that Plaintiff has the residual functional capacity to perform the exertional demands of sedentary, light, and medium work, but that his capacity for work is further diminished by significant nonexertional limitations which make it impossible for him to carry out complex instructions, and that he must have only minimal interaction with the public.  Tr. 16, 18.  Based on this residual functional

capacity, the administrative law judge found at step four of the sequential evaluation process that Plaintiff was able to perform his past relevant work as a hand packager/meat wrapper and stocker as those jobs are performed in the national economy.  Tr. 17, 18. Accordingly, she found that he was not disabled and not entitled to benefits.  Tr. 17, 18.

## IV.  DISCUSSION

### A.  ISSUES ON APPEAL

Plaintiff raises three errors on appeal.  First, he claims that the administrative law judge failed to properly analyze the opinions of his treating physicians.  Second, he claims that the administrative law judge failed in her duty to properly develop the record. Third, and finally, Plaintiff asserts that the residual functional capacity (RFC) finding of the administrative law judge was not supported by the record as a whole.

### 1. Treating Physician Analysis

Plaintiff first claims that the administrative law judge committed error in failing to properly analyze the opinions of two of his treating physicians, Bhupathiraju Rajeswararaju, M.D. and Sachidanandan Naidu, M.D..

#### a.  Dr. Rajeswararaju

On May 6, 2005, Dr. Rajeswararaju, a physician at Red Rock Behavioral Health Services completed a "Mental Medical Source Statement" rating the effect of Plaintiff's depression on various work functions. In that statement, Dr. Rajeswararaju found Plaintiff to have a marked limitation in his ability to remember locations and work-like procedures, to understand and remember very short and simple instructions, and to understand and remember detailed instructions.  Tr. 269.  He also found a marked

4

limitation in Plaintiff's ability to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and to work in coordination with or proximity with others without being distracted by them. Tr. 270. Dr. Rajeswararaju found Plaintiff moderately limited in his ability to carry out very short and simple instructions, to carry out detailed instructions, and to maintain an ordinary routine without special supervision. Tr. 270.

With regard to social interaction, Dr. Rajeswararaju found Plaintiff to have marked limitations in his ability to interact appropriately with the general public, to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. Tr. 270. Dr. Rajeswararaju noted Plaintiff to have moderate limitations with regard to the ability to ask simple questions or request assistance, or to accept instructions and respond appropriately to criticism from supervisors. Tr. 270.

In the area of adaptation, Dr. Rajeswararaju found Plaintiff to have marked limitations in his ability to respond to changes in the work setting and to set realistic goals or make plans independently of others. He found moderate limitations in the ability to be aware of normal hazards and take appropriate precautions, and to travel to unfamiliar places or use public transportation. Tr. 271. Dr. Rajeswararaju assigned Plaintiff a current GAF score of 50. Tr. 272.

In making his argument that the administrative law judge erred in her analysis of Dr. Rajeswararaju's opinion, Plaintiff first notes the following discussion of that opinion in the decision:

> The Administrative Law Judge notes that the claimant "suddenly" went to Red Rock, and the doctor there found marked problems; however, the treating notes from Red Rock do not discuss such problems, and the claimant's GAF (global assessment of function) is in the 50s, which is within the moderate range of functional limitation.   The opinion of Bhupathiraju Rajeswararaju, M.D. that the claimant has marked restriction in several areas of mental functioning appears to be based solely on [Plaintiff's] subjective complaints as opposed to being based on any medically acceptable clinical and laboratory diagnostic techniques. The opinion appears to be inconsistent with the treating notes of Red Rock, which do not mention any such findings, and also inconsistent with the other substantial evidence in the record; therefore, Dr. Rajeswararaju's opinion is given minimal weight.

Tr. 16.  Plaintiff claims that the reasons given by the administrative law judge for her "rejection" of Dr. Rajeswararaju's opinion are "neither sufficiently specific nor legitimate reasons...."  Plaintiff's Brief, p. 15.  He then goes on to argue against the reasons given by the administrative law judge for giving Dr. Rajeswararaju's opinion minimal weight.

In response, the Commissioner initially questions Dr. Rajeswararaju's status as a treating physician.  Then the Commissioner contends that the medical source statement was inconsistent with Dr. Rajeswararaju's only examination of Plaintiff four months earlier,  that the restrictions therein were based on Plaintiff's subjective complaints, that the statement does not indicate upon what the conclusions therein are based, and that to the extent Plaintiff relies upon the GAF scores in the report, such do not necessarily relate to whether a claimant is able to work.  Commissioner's Brief, p. 5-6.  The Court will

turn to the subject matter of the specific objections each party has after setting forth the

legal standards governing the opinions of treating physicians.

"In deciding how much weight to give a treating source opinion, an [administrative

law judge] must first determine whether the opinion qualifies for 'controlling weight.'"

Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003).

> An [administrative law judge] must first consider whether the opinion
> is "well-supported by medically acceptable clinical and laboratory
> diagnostic techniques." If the answer to this question is "no," then the
> inquiry at this stage is complete. If the [administrative law judge] finds that
> the opinion is well-supported, he must then confirm that the opinion is
> consistent with other substantial evidence in the record. In other words, if
> the opinion is deficient in either of these respects, then it is not entitled to
> controlling weight. The agency ruling contemplates that the [administrative
> law judge] will make a finding as to whether a treating source opinion is
> entitled to controlling weight. In this case, the [administrative law judge]
> obviously did not give [the treating physician's] opinion controlling weight,
> but he did not articulate a reason. A finding at this stage ( as to whether the
> opinion is either unsupported or inconsistent with other substantial
> evidence) is necessary so that we can properly review the [administrative
> law judge's] determination on appeal.

Id. (citations omitted) (citing Social Security Ruling 96-2p, 1996 WL 374188, at *2). "In

choosing to reject the treating physician's assessment, an [administrative law judge] may

not make speculative inferences from medical reports and may reject a treating

physician's opinion outright only on the basis of contradictory medical evidence and not

due to his or her own credibility judgments, speculation or lay opinion." McGoffin v.

Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002) (quotations omitted).

However, that is not the end of the treating physician's rule analysis.  In Watkins,

the Tenth Circuit held that the administrative law judge must explain the weight given

to a treating physician's opinion even when it is not considered controlling.  Watkins,

350 F.3d at 1300.  Moreover, the administrative law judge must supply "good reasons" for the weight ultimately given to the treating doctor's opinion. Id. at 1301 (citing 20 C.F.R. § 404.1527(d)(2 )).  Because in Watkins, the administrative law judge failed to articulate the weight given to the treating doctor's opinion remand was necessary.  The Court explained:

> Here, the [administrative law judge] failed to articulate the weight, if any, he gave [the treating physician's] opinion, and he failed also to explain the reasons for assigning that weight or for rejecting the opinion altogether. We cannot simply presume the [administrative law judge] applied the correct legal standards in considering [the treating physician's] opinion. We must remand because we cannot meaningfully review the [administrative law judge's] determination absent findings explaining the weight assigned to the treating physician's opinion.

Id. (citing Drapeau v. Massanari, 255 F.3d 1211, 1214 (10th Cir. 2001)); Langley v. Barnhart, 373 F.3d 1116, 1119 (10th Cir. 2004) (even if  treating physician's opinion is not entitled to controlling weight, treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527); Social Security Ruling 96-2p, 1996 WL 374188, at *4.

In Langley, the Tenth Circuit remanded the case because, contrary to the requirements of Social Security Ruling 96-2p, the administrative law judge completely rejected the treating physician's opinion once he determined it was not entitled to controlling weight, without any consideration of what lesser weight the opinion should be given or discussion of the relevant factors set forth in 20 C.F.R. § 404.1527.  Langley, 373 F.3d at 1120.[2]

---

[2] Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant

In turning to the administrative law judge's analysis of Dr. Rajeswararaju's opinion, the Court disagrees with the Commissioner regarding Dr. Rajeswararaju's status as a treating physician.  A treating physician is defined by the social security regulations as a claimant's own physician  who has provided the claimant with medical treatment or evaluation and who has an ongoing relationship with the claimant.   20 C.F.R. §§ 404.1502, 416.902.  The regulation further provides that the Commissioner will consider that a claimant has an ongoing treatment relationship with a physician when the medical evidence establishes that the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required" for the claimant's medical condition. 20 C.F.R. §§ 404.1502, 416.902.  Under this definition, the Court finds that Dr. Rajeswararaju was a treating physician. It appears that Plaintiff saw Dr. Rajeswararaju for medication management in conjunction with his counselors at Red Rock Behavioral Health Services. He began treatment at Red Rock on December 8, 2004, and although there appears to be only one note of a visit with Dr. Rajeswararaju, there are several notes of visits with other care providers at Red Rock.  See Tr. 263-64; Tr. 255, 256-58, 259-60, 261, 262, 266.  More importantly, however, there is nothing in the record indicating that the *administrative law judge* did not consider Dr. Rajeswararaju to be a treating physician. See Tr. 16.

However, the Court agrees with the Commissioner that the administrative law judge did properly analyze the opinion of Dr. Rajeswararaju in determining how much

---

evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the administrative law judge's attention which tend to support or contradict the opinion. Id.

weight to assign to his medical source statement.  Although the administrative law judge did not explicitly say that she was not giving the opinion of Dr. Rajeswararaju controlling weight, such was obviously the case.  The administrative law judge states that the "opinion appears to be inconsistent with the treating notes of Red Rock, which do not mention any such findings," and that the opinion is "also inconsistent with the other substantial evidence in the record."  Tr. 16.  This is the test to be applied in determining whether a treating physician's opinion is to be given controlling weight.  Immediately after this statement, the administrative law judge states that she is giving the opinion "minimal" weight.  Id.  Prior to her conclusion, she had noted the length, nature, and extent of the treatment relationship, ("claimant 'suddenly' went to Red Rock"), the degree to which the physician's opinion is supported by relevant evidence ("the claimant's GAF ... is in the 50s, which is within the moderate range of functional limitation") ("the opinion ... appears to be based solely on [Plaintiff's] subjective complaints"), and consistency between the opinion and the record as a whole ("the treating notes from Red Rock do not discuss such problems").

The Court finds that the administrative law judge gave specific, legitimate reasons why she failed to give Dr. Rajeswararaju's opinion controlling weight, and that her decision is adequate to explain the weight assigned to the opinion. Her finding regarding the ultimate weight assigned ("minimal") is supported by good, specific reasons. Thus, her decision can be meaningfully reviewed on this point, and is supported by substantial evidence.

**b.  Dr. Naidu**

Plaintiff also contends that the administrative law judge erred in failing to discuss Dr. Naidu's December 2, 2004, opinion – part of a treatment note for a visit in which the complaint is noted to be diabetes follow up and back pain – wherein it is stated "No heavy lifting bending or stooping!" Plaintiff's Brief, p. 18 (citing Tr. 234). Plaintiff also makes the somewhat inconsistent contentions that both the administrative law judge and his own representative likely overlooked this opinion due to its inclusion in an illegible note and "also that he did not believe that the issue was significant because there had been no recent treatment...." Plaintiff's Brief, p. 18 n. 16. However, he claims that the Tenth Circuit Court of Appeals has recently equated claimants represented by non-attorney representatives with pro se claimants, making he and his representative's failure to explore the issue "unfortunate" but not preclusive. Id. He claims that failure to consider the opinion cannot be considered harmless as it is "directly contrary" to the administrative law judge's finding that he could perform the medium jobs of hand packager/meat wrapper and stocker. Id. at 18-19. Plaintiff also contends that the administrative law judge should have re-contacted Dr. Naidu for clarification. Plaintiff's Brief, p. 19.

The Commissioner responds that the opinion of Dr. Naidu has no basis in his treatment notes or the record, and that he only treated Plaintiff three times for lower back pain – as he usually treated Plaintiff for his diabetes. Commissioner's Brief, p. 7-8. He further claims that despite problems with legibility of Dr. Naidu's treatment notes, they are legible enough to discern the inadequacy of his opinion regarding Plaintiff's back pain, and thus no duty to recontact him was triggered. Id. at 9. The Commissioner also

suggests that Dr. Naidu was not a treating physician with regard to Plaintiff's lower back pain.

Plaintiff replies that the Commissioner is engaging in an improper post hoc justification, and that the administrative law judge's failure to even mention Dr. Naidu's opinion regarding his back pain renders any such argument unpersuasive. Plaintiff's Reply, p. 5. Plaintiff also notes that Dr. Naidu saw Plaintiff fifteen times over three years, and the fact that he may have only seen him three times for this particular condition does not disqualify him as a treating source. Id. at 5-6.

Although the Court is sensitive to Plaintiff's concerns regarding post hoc justification of administrative action, and realizes that application of the harmless error rule is rarely appropriate in these settings, it is convinced that its application is proper here. Here, the issue of Plaintiff's back pain was specifically mentioned by his representative at the hearing, and the administrative law judge was told:

> There's some mention, Your Honor, and I think he's got some problems, but it's not anything documented other than in the statement of one of the medical records, I think, about some back problems that he's had, for back pain, but I don't think he's ever gotten any treatment recently for that, so I don't think we can go there with that.

Tr. 316. Also, the brief references to "back pain" were in the record before the administrative law judge. On November 24, 2004, Plaintiff saw Dr. Naidu with complaints of back pain and diabetes follow up. Tr. 235. Dr. Naidu's plan appears to be "gentle [range of motion] exercise." Id. Plaintiff saw Dr. Naidu again on December 2, 2004, with complaints of diabetes follow up and back pain. Tr. 234. Dr. Naidu's assessment was "[low back pain]" and his plan was "No heavy lifting bending or

stooping." <u>Id.</u>  Then, on December 9, 2004, Plaintiff returned to Dr. Naidu with complaints of "diabetes follow up, back pain no better." Tr. 237, 254 [duplicate record]. Dr. Naidu's assessment continues to be "[low back pain]," but his plan is admittedly not legible. <u>Id.</u> As conceded by Plaintiff's representative at the March 2005 administrative hearing, there is no indication of any further treatment for back pain from Dr. Naidu or any other physician.

First, the Court disagrees with the Commissioner regarding Dr. Naidu's status as a treating physician for essentially the same reasons given above with regard to Dr. Rajeswararaju.  Second, it is clear that the opinion of Dr. Naidu regarding Plaintiff's limitation in the form of "[n]o heavy lifting bending or stooping" is not addressed in the administrative law judge's opinion.  However, in this situation, the Court finds the omission harmless.   The principle of harmless error is applicable in the administrative review setting. <u>Allen v. Barnhart</u>,  357 F.3d 1140, 1145 (10th Cir. 2004).  Courts should be cautious in its application, however, to avoid usurping the administrative law judge's responsibility to find the facts, and to violate the general rule against post-hoc justification of administrative action.  <u>Id.</u>  However, as stated in <u>Allen</u>, the doctrine is appropriately applied in a narrow class of circumstances:

> it nevertheless may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where, based on material the [administrative law judge] did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.

<u>Allen v. Barnhart</u>  357 F.3d 1140, 1145 (10th Cir. 2004).  In this case, the administrative law judge asked Plaintiff and his representative in the hearing if there was anything else

they wanted to address, and Plaintiff's representative specifically noted the back pain issue. The three notes from Dr. Naidu regarding Plaintiff's lower back pain are contained in the medical record before the administrative law judge; thus this is material the administrative law judge clearly did consider. However, in light of Plaintiff's own statement at the hearing that he had sought no recent treatment, and Plaintiff's failure to identify back problems as an impairment at any other stage in the proceeding, the Court is confident that no reasonable factfinder following a treating physician analysis would have assigned any limitations based on this vague and isolated statement of Dr. Naidu at the bottom of the December 2, 2004, treatment note. Likewise, "it is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the 'evidence' the [administrative law judge] 'receive[s] from [the claimant's] treating physician' that triggers the duty." White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001). Thus, there would be no obligation to recontact Dr. Naidu to interpret what Plaintiff characterizes as illegible notes. Accordingly, this point of error is denied.

## 2. Duty to Develop the Record

Next Plaintiff contends that the administrative law judge erred in not ordering a consultative mental status examination. Plaintiff's Brief, p. 21. Plaintiff claims that his representative specifically requested that a complete psychological examination be performed, and that the administrative law judge initially agreed. Id. He claims that a consultative examination was appropriate because the administrative law judge found that the treatment notes of Red Rock Behavioral Health Services did not support the

opinion of his psychiatrist, Dr. Rajeswararaju.  Id.  He claims that reliance on the Psychiatric Review Technique form (PRT) completed by the state agency physicians to justify the administrative law judge's failure to order a consultative examination would be in error because the PRT was completed well before he sought treatment at Red Rock. Id.

He also claims that the administrative law judge erred in failing to provide consultative physician Dr. Azhar Afaq, M.D. with medical records relating to his cardiac history where Dr. Afaq had indicated that those records were necessary for him to adequately evaluate Plaintiff's physical abilities.  Plaintiff's Brief, p. 22.

The Commissioner responds that Plaintiff has failed to indicate what additional evidence the consultative examiner could have provided that is not already in the record. Commissioner's Brief, p. 9.  He claims that the records of Red Rock and the report of Dr. Rajeswararaju were sufficient for the administrative law judge to properly evaluate Plaintiff's mental condition, and that further testing was therefore not needed.  Id. at 9-10.   With regard to Dr. Afaq, the Commissioner contends that even Plaintiff's cardiologist assessed him with only mild cardiac disease, and did not place any limitations on him at the time of discharge.   Commissioner's Brief, p. 10.   The Commissioner notes that the administrative law judge took Plaintiff's cardiac status into account when she limited him to medium work, and that there is no merit to his claim that she failed to adequately develop the record.

An administrative law judge "has broad latitude in ordering a consultative examination."  Diaz v. Secretary of Health and Human Servs., 898 F.2d 774, 778 (10th

Cir. 1990).  The Tenth Circuit has recognized that a consultative examination is often required for proper resolution of a disability claim "where the medical evidence in the record is inconclusive" or "where additional tests are required to explain a diagnosis already contained in the record."  Hawkins v. Chater, 113 F.3d 1162, 1166 (10th Cir. 1997).  The administrative law judge "does not have to exhaust every possible line of inquiry," as "[t]he standard is one of reasonable good judgment."  Hawkins, 113 F.3d at 1168.  Although it would have been within the administrative law judge's province to order a consultative examination, the facts of Plaintiff's case did not mandate that she request a consultative mental status examination.

Although Plaintiff contends that the administrative law judge "initially agreed that [a consultative examination] would be appropriate at the hearing," Plaintiff's Reply, p. 7, it is clear from the transcript of the hearing that the administrative law judge's decision as to whether to order such an examination depended upon the content of the records from Red Rock Behavioral Health Services, which had not yet been received:

[Administrative Law Judge]:  How much time do you think you need to get the records from the Red Rock folks and the others?

[Representative]: We've already requested those and I - -

[Representative]: I know, but maybe we got them . . .

[Administrative Law Judge]: Okay, today is - -

[Representative]: But we'll follow up with that and based on what we get, there may be a need to have a complete psychological evaluation done, Your Honor, I [inaudible].

[Administrative Law Judge]: Yeah, I agree with you because the last one we had was a little bit earlier.  Let's do this so that for our tape's sake and for out [sic] reporter, that when we show post for getting those other records,

16

and then put down that we may need a consultative examination.  Let's put
this in two weeks, why don't we show May 6th, excuse me April 6, and if
you see you need more time because you haven't heard from those folks at
Red Rock - -

[Representative]: Right.

[Administrative Law Judge]:   - - just call and let us know.

[Representative]: Okay.

[Administrative Law Judge]: Well, all right then . . . what that all means is
that we're waiting on getting those records because as you've told us that
you've gone back for more treatment.  It sounds like they've taken notes and
they're trying to work with you on some of the issues, and then we wanna
see what that tells them.  If that give us enough information so that we can
issue a decision, we'll do that.  If we see we need more information, we're
leaving that door open too.  We try to make the record as complete as is
needed so that whatever decision is issued actually has a real basis, and
that's what we're talking about.  If we see there's a need for additional
records, we'll contact [your representative].  If we see there's a need maybe
for another consultative examination which is an examination where you're
sent to a doctor at Social Security's expense to get additional information,
we'll let you know on that so that you can agree or raise an objection or
advise us on that.

Tr. 323-24.  Thus, the administrative law judge's "agreement" to a consultative mental

examination was clearly conditional.  Furthermore, Plaintiff provides no authority for his

statement that it is error for the administrative law judge to fail to explain a failure to

order a consultative examination in the decision, assuming the failure itself was proper.

In this case, the administrative law judge did not reject Dr. Rajeswararaju's opinion

because the diagnosis was inconclusive, but gave it minimal weight because his opinion

was inconsistent with the other records from Red Rock and because it recited almost

verbatim Plaintiff's *subjective* complaints.  Additional medical evidence was not

necessary in order for the administrative law judge to decide what weight to assign to the

opinion of Dr. Rajeswararaju based upon these factors, and thus her failure to order an additional consultative mental examination was not error.

The same is true of the administrative law judge's alleged failure to provide additional records to consultative examiner Dr. Azhar Afaq regarding Plaintiff's cardiac history.  Although Dr. Afaq commented that he "need[s] more information in terms of his cardiac history," he also clearly found that Plaintiff's  "ability to do work related activities such as sitting, standing, moving about and lifting, carrying and handling objects appears to be okay." Tr. 175.  Moreover, from the record it is clear that the only cardiac history available would have shown Plaintiff went to the Carnegie Tri-County Municipal Hospital Emergency Room on July 7, 2002, complaining of chest pain, where he was confirmed to have had an acute myocardial infarction as reported by Plaintiff in his history to Dr. Afaq.  Tr. 134-35.  It would have also shown that he was admitted to Southwestern Medical Center in Lawton, and discharged the very next day in stable condition with the diagnosis of a non-Q wave myocardial infarction.   Tr. 238-39. Catheterization at that time could not identify the infarct vessel, but Plaintiff was identified to have multiple risk factors for coronary artery disease, such as high blood pressure and cholesterol, and diabetes.  Tr. 244.  The records would have also showed something Plaintiff denied in his history to Dr. Afaq: drug abuse in the form of methamphetamine and marijuana, including the intravenous use of methamphetamine a few days before his myocardial infarction.  Tr. 134, 238. His drug screen was positive for amphetamine and marijuana.  Tr. 139.  Plaintiff also reported to Dr. Afaq that he had a myocardial infarction in December 2002; however, there are no records of such an

18

event.  Plaintiff did present to the Carnegie Tri-County Municipal Hospital in October 2002, complaining of chest pain, but the discharge diagnosis was uncontrolled diabetes and myalgias due to a viral syndrome.  Tr. 156-57.   Accordingly, Plaintiff has failed to show, and the record does not reveal, any records which would have changed the assessment of Dr. Afaq.  Although Dr. Afaq stated that he needed more information, that was without knowing whether such would affect his assessment; it was not a violation of the administrative law judge's duty to develop the record for her not to provide that information under these circumstances.

### 3.  RFC Finding

Finally, Plaintiff claims that the administrative law judge's finding that he is able to perform medium work is not supported by substantial evidence due to his "back pain," his continually elevated blood sugars, a heart attack, and reduced pulses in his legs.  Plaintiff's Opening Brief, p. 23-24.  He states with regard to his uncontrolled diabetes that his failure to comply with his insulin regimen was caused by his inability to afford his medication, and that he testified to this fact at the hearing.  Plaintiff's Opening Brief, p. 24 (citing Tr. 302-03).  He states that none of the records of his noncompliance "appear" to contradict this statement, and that although he is now able to obtain medication at no charge, the administrative law judge should not be able to rely on that as he was not "provided with information about medical care [until] well over twelve months after his alleged onset date."  Id. at 25.

The Commissioner responds that Plaintiff has failed to show what additional limitations would result from the conditions he identifies, and that the administrative

law judge considered each of them in assessing his RFC.  Commissioner's Brief, p. 10.

The Commissioner points to essentially normal physical examinations, and to the fact

that Plaintiff admits to walking for exercise.  Id. at 11 (citing 174-75, 234-35, 237, 259,

309).   As to Plaintiff's noncompliance, the Commissioner notes that Plaintiff was

noncompliant even while working, and never indicated to his physicians that he was

unable to afford his medication.  Id.  The Commissioner also notes that Plaintiff's

noncompliance was only one factor relied upon in assessing his credibility, and Plaintiff

has not shown that he sought free or low-cost medical care and was denied.  Id.  Finally,

the Commissioner contends that the record supports the administrative law judge's

determination that Plaintiff can perform the RFC, as contained in her hypothetical

question to the vocational expert.  Id.

Part of the administrative law judge's analytical task is to determine a claimant's

RFC, defined as what he can still do despite his limitations. 20 C.F.R. §§ 404.1545(a);

416.945(a).  The administrative law judge has the duty to make specific and detailed

predicate findings and to include a sufficient narrative discussion concerning a

claimant's residual functional capacity. Social Security Ruling 96-8p, 1996 WL 374184,

at *7 (stating that the RFC assessment must include a narrative discussion describing

how the evidence supports each conclusion, must contain a thorough discussion and

analysis of the objective medical and other evidence, and must include a discussion of

why reported symptom-related functional limitations can or cannot reasonably be

accepted as consistent with the medical evidence); see also Winfrey v. Chater, 92 F.3d

1017, 1023- 24 (10th Cir.1996) (describing the administrative law judge's responsibilities in assessing RFC under phase one of step four of the Commissioner's process).

In this case, the Court agrees with the Commissioner that the decision reflects the administrative law judge's consideration of the medical evidence of record and other evidence, and that upon examination of the record as a whole, the decision is indeed supported by substantial evidence.  First, the administrative law judge discussed the medical evidence regarding Plaintiff's impairments, including evidence that his diabetic symptoms always improve with treatment, the mild nature and apparent precipitating cause of his myocardial infarction (his methamphetamine use), the diagnoses of only mild coronary artery disease, and her reasons for only assigning minimal weight to the opinion of Dr. Rajeswararaju regarding the functional limitations caused by Plaintiff's mental impairment.   Second, she relied upon credibility factors such as the inconsistencies between Plaintiff's own testimony regarding the effects of his impairments and his daily routine, his failure to report supposed side effects of medications to his doctors, and discrepancies between Plaintiff's assertions and information contained in the documentary reports (such as the inaccurate history given to Dr. Afaq).  Contrary to Plaintiff's claim that there is nothing in the record contradicting his claim of noncompliance, the Court would note that his own treating physician noted Plaintiff's failure to follow a diabetic diet in addition to his failure to take medication, Tr. 205, 210, and that Troy L. Harden, D.O., reported on October 7, 2002, that Plaintiff "assured me that he would go to the pharmacy and get his insulin when he went home." Tr. 157.   The Court finds that the administrative law judge adequately set forth her

reasons for the medium RFC assessment, which she then found to be further reduced based upon the additional evidence received regarding Plaintiff's mental impairment: "his capacity for work is diminished by significant nonexertional limitations which make it impossible for him to carry out complex instructions, although he is able to carry out simple and detailed instructions.  He must have only minimal interaction with the public."  Tr. 16 ("Based on additional evidence received into the record at the hearing level ... claimant has been somewhat more limited than was earlier thought.").  Id.  In conclusion, the administrative law judge's decision regarding Plaintiff's RFC is supported by substantial evidence.

## CONCLUSION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the administrative law judge and the pleadings and briefs of the parties, the Court finds that the final decision of the Commissioner of the Social Security Administration is supported by substantial evidence and should be affirmed.

**DATED this 11th day of April, 2007.**

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE